**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Dana M. Cimera
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MARVIN GEORGES and JEREL POOL,** individually and on behalf of all others similarly situated, <br><br> **Plaintiffs,** <br> -against- <br><br> **DETROIT PIZZA NYC LLC, DETROIT PIZZA VENTURES LLC, DETROIT PIZZA LLC, DETROIT PIZZA EAST LLC, and SCOTT STEVEN GREGERSON,** <br><br> **Defendant.** | **No:** <br><br><br> **CLASS ACTION COMPLAINT** |

Marvin Georges and Jerel Pool ("Plaintiffs"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to themselves, and upon information and belief as to other matters, alleges as follows:

### NATURE OF THE ACTION

1. This action arises out of Detroit Pizza NYC LLC, Detroit Pizza Ventures LLC, Detroit Pizza LLC, Detroit Pizza East LLC, and Scott Steven Gregerson ("Defendants" or "Jet's Pizza") failure to comply with the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the New York Labor Law, Article 6, §§ 190 *et seq.* ("NYLL") and the New York City Fair Workweek Law, Title 20, Chapter 12 of the New York City Administrative Code ("Fair Workweek Law").

2. This lawsuit seeks to recover overtime compensation, agreed upon wages, and other

damages for Plaintiff and similarly situated hourly positions (collectively, "Fast Food Workers") who work or have worked for Defendants in New York.

3.      At all relevant times, Defendants compensated Plaintiffs and all other Fast Food Workers on an hourly basis.

4.      Defendants failed to pay Plaintiffs and other Fast Food Workers for all hours worked. In this regard, Defendants regularly shaved time from Fast Food Workers recorded hours.

5.      Further, Defendants retained tips intended for Plaintiffs and other Fast Food Workers.

6.      Defendants failed to provide Plaintiffs and similarly situated Fast Food Workers with an accurate statement of wages pursuant to NYLL § 195(3), as the paystubs provided failed to notate Plaintiffs' and similarly situated Fast Food Workers' correct number of hours they worked.

7.      Plaintiffs relied on their paystubs to ensure that Defendants paid them the correct rate for their hours worked.

8.      Due to Defendants' failure to provide the correct number of hours worked on the wage statements provided to Plaintiffs and similarly situated Fast Food Workers, Plaintiffs and similarly situated Fast Food Workers were misinformed about the correct number of hours worked, and thus the correct amount of wages they were entitled to receive.

9.      Defendants' incorrect wage statements allowed Defendants to continue their unlawful wage and hour scheme without Plaintiffs' or similarly situated Fast Food Workers' awareness that they were being underpaid. Accordingly, Plaintiffs and similarly situated Fast Food Workers are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide them with accurate wage statements, up to a total of five thousand

dollars each pursuant to NYLL § 195(3).

10.     This lawsuit also seeks to recover unpaid schedule change premiums and other damages for Plaintiff and Fast Food Workers who work or have worked for Defendants in New York City.

11.     New York City passed the Fair Workweek Law to require fast food employers to provide their employees with predictable schedules with advance notice, sufficient time between shifts, and pathways to full-time employment.

12.     Defendants have violated the Fair Workweek Law by failing to provide predictable schedules with at least 14-days' notice, changing employees' schedules at the last minute, requiring employees to work clopenings without written consent and without paying the premium, failing to offer new shifts to current employees before hiring new employees, and reducing employees' hours by more than 15% or terminating employees without just cause and without providing a written explanation. *See* N.Y.C. Admin. Code §§ 20-1221-22, 20-1231; 20-1241.

13.     Plaintiffs bring this action on behalf of themselves and all similarly situated current and former Fast Food Workers pursuant who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq*., and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiffs and other similarly situated employees of their lawfully earned wages.

14.     Plaintiffs also bring this action on behalf of themselves and all other similarly situated Fast Food Workers in New York City pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the NYLL and the Fair Workweek Law.

15.     Additionally, Plaintiff Georges has individual claims against Defendants for retaliation under the FLSA and NYLL.

16.     In this regard, Plaintiffs' Counsel, Fitapelli & Schaffer, LLP, reached out to Defendants via demand letter, on October 20, 2023, stating Plaintiffs' claims against Defendants on behalf of themselves and similarly situated fast food workers. The letter was delivered via Fed-Ex on October 23, 2023.

17.     On October 24, 2023, Defendants, via District Manager, Kyle Dixons, asked Plaintiffs Georges to sign a document entitled "Jet's Pizza NYC Point of Clarification". *See* **Exhibit A**. The document explained that Jet's Pizza would retroactively receive his previously promised pay raise retroactively. The document stated Georges "said after he brought these issues to Kyle [Dixon] to resolve that if he was paid the below compensation [$241.05] he would no longer have any wage and labor or related claims with Jet's Pizza." *Id.*

18.     Plaintiff Georges did not agree with these statements and refused to sign the document.

19.     Thereafter, Defendants immediately reduced Plaintiffs Georges' hours from approximately 40 per workweek to 32, a 20% reduction, without just cause and without providing a written explanation.

20.     On November 8, 2023, Plaintiffs' Counsel received a response from Defendants regarding their claims. Defendants' response letter threatens criminal charges against Plaintiff Marvin Georges, civil claims against both plaintiffs, in excess of $800,000, and alleged attorney malpractice. *See* **Exhibit B**.

21.     On November 15, 2023, Defendants terminated Plaintiff Georges in retaliation for bringing claims under the FLSA, NYLL, and Fair Workweek Law. The reasons given for Plaintiff Georges' termination are pretext and factually incorrect.

## THE PARTIES

### Plaintiffs

#### Marvin Georges

22.     Marvin Georges ("Georges") is an adult individual who is a resident of the State of New York.

23.     Georges was employed by Defendants as a fast food worker Jet's Pizza in New York City from in or around August 15, 2023 until November 15, 2023.

24.     Georges is a covered employee within the meaning of the FLSA, the NYLL, and the Fair Workweek Law.

25.     A written consent form for Georges is being filed with this Class Action Complaint.

#### Jerel Pool

26.     Jerel Pool ("Pool") is an adult individual who is a resident of the State of New York.

27.     Pool was employed by Defendants as a fast food worker at Jet's Pizza in New York City from in or around August 13, 2023 until October 6, 2023.

28.     Pool is a covered employee within the meaning of the FLSA, the NYLL, and the Fair Workweek Law.

29.     A written consent form for Pool is being filed with this Class Action Complaint.

### Defendants

30.     Defendants have employed and/or jointly employed Plaintiffs and similarly situated employees at all times relevant.

31.     Each Defendant has had a substantial control over Plaintiffs' and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

32.     Defendants are part of a single integrated enterprise that has jointly employed

Plaintiff and similarly situated employees at all times relevant.

33.    During all relevant times, Defendants' operations have been interrelated and unified.

34.    During all relevant times, Defendants have shared a common upper management and have been centrally controlled and or owned by Defendants.

35.    During all relevant times, Defendants have centrally controlled the labor relations at the Jet's Pizza fast food restaurants owned by Defendants.

**Detroit Pizza NYC LLC**

36.    Detroit Pizza NYC LLC is a domestic business corporation organized and existing under the laws of New York.

37.    Detroit Pizza NYC LLC's service of process address, listed with the New York Department of State, Division of Corporations, is 120 9th Avenue, New York, New York 10011 – a Jet's Pizza location owned by Defendants.

38.    Defendant Scott Gregerson is listed as the registered agent for Detroit Pizza NYC LLC with the New York Department of State, Division of Corporations.

39.    Detroit Pizza NYC LLC was and is a covered employer within the meaning of the FLSA, the NYLL, and the Fair Workweek Law, and at all times relevant, employed Plaintiff and similarly situated employees.

40.    Detroit Pizza NYC LLC is a "fast food establishment" under the Fair Workweek Law because it is a limited-service establishment that is part of a chain with 30 or more establishments nationally, where patrons order or select food and drink items and pay before eating. N.Y.C. Admin. Code § 20-1201.

41.    Detroit Pizza NYC LLC has maintained control, oversight, and direction over

Plaintiff and Fast Food Workers, including timekeeping, payroll, and other employment practices that applied to them. In this regard, Detroit Pizza NYC LLC was the "payer" on Plaintiffs' paystubs.

42.     Detroit Pizza NYC LLC applies the same employment policies, practices, and procedures to all Fast Food Workers in its operation, including policies, practices, and procedures with respect to payment of wages and scheduling.

43.     Upon information and belief, at all relevant times, Detroit Pizza NYC LLC has had an annual gross volume of sales in excess of $500,000.

**Detroit Pizza Ventures LLC**

44.     Detroit Pizza Ventures LLC is a foreign business corporation organized and existing under the laws of Illinois.

45.     Detroit Pizza Ventures LLC's service of process address, listed with the New York Department of State, Division of Corporations, at 19 N Seebert Street, Cary, Illinois – Defendant Scott Gregerson's home address.

46.     Defendant Scott Gregerson is listed as the registered agent for Detroit Pizza Ventures NYC LLC with the New York Department of State, Division of Corporations.

47.     Detroit Pizza Ventures LLC was and is a covered employer within the meaning of the FLSA, the NYLL, and the Fair Workweek Law, and at all times relevant, employed Plaintiff and similarly situated employees.

48.     Detroit Pizza Ventures LLC is a "fast food establishment" under the Fair Workweek Law because it is a limited-service establishment that is part of a chain with 30 or more establishments nationally, where patrons order or select food and drink items and pay before eating. N.Y.C. Admin. Code § 20-1201.

49. Detroit Pizza Ventures LLC has maintained control, oversight, and direction over Plaintiff and Fast Food Workers, including timekeeping, payroll, and other employment practices that applied to them.

50. Detroit Pizza Ventures LLC applies the same employment policies, practices, and procedures to all Fast Food Workers in its operation, including policies, practices, and procedures with respect to payment of wages and scheduling.

51. Upon information and belief, at all relevant times, Detroit Pizza Ventures LLC has had an annual gross volume of sales in excess of $500,000.

**Detroit Pizza LLC**

52. Detroit Pizza LLC is a domestic business corporation organized and existing under the laws of New York.

53. Detroit Pizza LLC's service of process address, listed with the New York Department of State, Division of Corporations, is 120 9th Avenue, New York, New York 10011 – a Jet's Pizza location owned by Defendants.

54. Defendant Scott Gregerson is listed as the registered agent for Detroit Pizza NYC LLC with the New York Department of State, Division of Corporations.

55. Detroit Pizza LLC was and is a covered employer within the meaning of the FLSA, the NYLL, and the Fair Workweek Law, and at all times relevant, employed Plaintiff and similarly situated employees.

56. Detroit Pizza LLC is a "fast food establishment" under the Fair Workweek Law because it is a limited-service establishment that is part of a chain with 30 or more establishments nationally, where patrons order or select food and drink items and pay before eating. N.Y.C. Admin. Code § 20-1201.

57.    Detroit Pizza LLC has maintained control, oversight, and direction over Plaintiff and Fast Food Workers, including timekeeping, payroll, and other employment practices that applied to them.

58.    Detroit Pizza LLC applies the same employment policies, practices, and procedures to all Fast Food Workers in its operation, including policies, practices, and procedures with respect to payment of wages and scheduling.

59.    Upon information and belief, at all relevant times, Detroit Pizza LLC has had an annual gross volume of sales in excess of $500,000.

**Detroit Pizza East LLC**

60.    Detroit Pizza East LLC is a domestic business corporation organized and existing under the laws of New York.

61.    Detroit Pizza East LLC's service of process address, listed with the New York Department of State, Division of Corporations, is 120 9th Avenue, New York, New York 10011 – a Jet's Pizza location owned by Defendants.

62.    Defendant Scott Gregerson is listed as the registered agent for Detroit Pizza East LLC with the New York Department of State, Division of Corporations.

63.    Detroit Pizza East LLC was and is a covered employer within the meaning of the FLSA, the NYLL, and the Fair Workweek Law, and at all times relevant, employed Plaintiff and similarly situated employees.

64.    Detroit Pizza East LLC is a "fast food establishment" under the Fair Workweek Law because it is a limited-service establishment that is part of a chain with 30 or more establishments nationally, where patrons order or select food and drink items and pay before eating. N.Y.C. Admin. Code § 20-1201.

65.    Detroit Pizza East LLC has maintained control, oversight, and direction over Plaintiff and Fast Food Workers, including timekeeping, payroll, and other employment practices that applied to them.

66.    Detroit Pizza East LLC applies the same employment policies, practices, and procedures to all Fast Food Workers in its operation, including policies, practices, and procedures with respect to payment of wages and scheduling.

67.    Upon information and belief, at all relevant times, Detroit Pizza East NYC LLC has had an annual gross volume of sales in excess of $500,000.

**Scott Steven Gregerson**

68.    Upon information and belief, Scott Steven Gregerson ("Gregerson") is a resident of the State of Illinois.

69.    At all relevant times, Gregerson has been the owner and operator of Detroit Pizza NYC LLC, Detroit Pizza Ventures LLC, Detroit Pizza LLC, and Detroit Pizza East LLC, doing business as Jet's Pizza.

70.    Gregerson signed a letter for public comment dated December 16, 2022, on as an "operator" of Jet's Pizza to the New York City Department of Consumer and Worker Protection in regard to New York City's Proposed Rules related to Minimum Pay for Food Delivery Service Workers.[1]

71.    Gregerson is identified in numerous news media articles as the owner of Jet's Pizza locations in New York City.[2][3]

---

[1] https://www.nyc.gov/assets/dca/downloads/pdf/about/PublicComments-Proposed-Rule-Minimum-Pay-for-Food-Delivery-Workers-2023.pdf; (see pages 369-370).
[2] https://whatnowny.com/detroit-takes-nyc-jets-pizza-brings-iconic-pizza-style-to-upper-west-side/#google_vignette
[3] https://www.brooklynpaper.com/jets-pizza-opens-brooklyn-location/

72.     At all relevant times, Gregerson has had power over personnel decisions at Jet's Pizza, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

73.     At all relevant times, Gregerson has had power over payroll decisions at Jet's Pizza, including the power to retain time and/or wage records.

74.     At all relevant times, Gregerson has been actively involved in managing the day to day operations of Jet's Pizza.

75.     At all relevant times, Gregerson has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

76.     At all relevant times, Gregerson has had the power to transfer the assets and/or liabilities of Jet's Pizza.

77.     At all relevant times, Gregerson has had the power to declare bankruptcy on behalf of Jet's Pizza.

78.     At all relevant times, Gregerson has had the power to enter into contracts on behalf of Jet's Pizza.

79.     At all relevant times, Gregerson has had the power to close, shut down, and/or sell Jet's Pizza.

80.     Gregerson is a covered employer within the meaning of the FLSA, the NYLL, and the Fair Workweek Law, and at all relevant times, has employed and/or jointly employed Plaintiffs and similarly situated employees.

81.     Gregerson send Plaintiffs' Counsel the response letter on behalf of Defendants. **Exhibit B**.

## JURISDICTION AND VENUE

82.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and jurisdiction over Plaintiffs' state and city law claims pursuant to 28 U.S.C. § 1367.

83.    This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

84.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants conduct business in this District.

## COLLECTIVE ACTION ALLEGATIONS

85.    Plaintiffs brings the First Cause of Action, an FLSA claim, on behalf of themselves and all similarly-situated persons who work or have worked as Fast Food Workers for Jet's Pizza who elect to opt-in to this action (the "FLSA Collective").

86.    Defendants are liable under the FLSA for, inter alia, failing to properly compensate Plaintiffs and the FLSA Collective.

87.    Consistent with Defendants' policies and patterns or practices, Plaintiffs and the FLSA Collective were not paid the proper premium overtime compensation of 1.5 times their regular rates of pay for all hours worked beyond 40 per workweek.

88.    All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

89.    As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective.  This policy and pattern or practice includes, but is not limited

to, willfully failing to pay their employees, including Plaintiffs and the FLSA Collective, any overtime wages for all hours worked in excess of 40 hours per workweek.

## CLASS ACTION ALLEGATIONS

90.     Plaintiff brings the Second, Third, Fourth, and Fifth Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

> All persons who work or have worked as Fast Food Workers for Detroit Pizza NYC LLC, Detroit Pizza Ventures LLC, Detroit Pizza LLC, and/or Detroit Pizza East LLC in New York City between May 8, 2017[4] and the date of final judgment in this matter (the "NYLL Class").

91.     Plaintiff brings the Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Causes of Action, Fair Workweek claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

> All persons who work or have worked as Fast Food Workers for Detroit Pizza NYC LLC, Detroit Pizza Ventures LLC, Detroit Pizza LLC, and/or Detroit Pizza East LLC in New York City between December 22, 2021 and the date of final judgment in this matter (the "FWW Class").

92.     The members of the NYLL Class and the FWW Class (together, the "New York Classes") each are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

93.     There are more than fifty members of each of the New York Classes.

94.     Plaintiffs' claims are typical of those claims that could be alleged by any member of the New York Classes, and the relief sought is typical of the relief which would be sought by

---

[4] This class period is due to Governor Cuomo's Executive Order that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op. 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law).

each member of the New York Classes in separate actions.

95.    Plaintiffs and the New York Classes have all been injured due to Defendant's common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected everyone in the New York Classes similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each member of the New York Classes.

96.    Plaintiffs are able to fairly and adequately protect the interests of the New York Classes and has no interests antagonistic to the New York Classes.

97.    Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

98.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

99.    Common questions of law and fact exist as to the New York Classes that predominate over any questions only affecting Plaintiffs and/or each member of the New York Classes individually and include, but are not limited to, the following:

(a) whether Defendants failed to pay Plaintiffs and the NYLL Class agreed upon wages for all of the hours they worked up to 40 hours per workweek;

(b) whether Defendants correctly compensated Plaintiffs and the NYLL Class at time and one half their regular rate of pay for hours worked in excess of 40 per workweek;

(c) whether Defendants retained and/or otherwise unlawfully misappropriated tips from Plaintiffs and the NYLL Class;

(d) whether Defendants failed to furnish Plaintiffs and the NYLL Class with accurate statements with every payment of wages, as required by the NYLL;

(e) whether Defendants failed to provide Plaintiffs and the FWW Class with a written good faith estimate of the hours, dates, times, and locations of the employee's expected regular work schedule ("good faith estimate"); and whether Defendants reduced employees' hours worked by more than 15%, without just cause or a legitimate business reason, and without providing a written explanation. N.Y.C. Admin. Code § 20-1221(a); N.Y.C. Admin. Code § 20- 1272;

(f) whether Defendants failed to provide Plaintiffs and the FWW Class with a written work schedule at least 14 days before the first day of each schedule. N.Y.C. Admin. Code §§ 20-1201 and 20-1221(b)-(c); failed to post the schedule in the workplace and/or personally provide it to each employee, either electronically or on paper. N.Y.C. Admin. Code § 20-1221(c)(1); and/or failed to provide employees with the new versions of the schedule within 24 hours of making the change. Id. § 20-1221(c)(2);

(g) whether Defendants obtained written consent when requiring Plaintiffs and the FWW Class to work additional time. N.Y.C. Admin. Code § 20-1221(d); 6 R.C.N.Y. § 7-606(a);

(h) whether Defendants paid Plaintiffs and the FWW Class a schedule change premium ("premium pay") when they made a change of more than 15 minutes to an employee's schedule with less than 14 days' notice. N.Y.C. Admin. Code § 20-1222(a); 6 R.C.N.Y. § 7- 606(b);

(i) whether Defendants both obtained written consent from Plaintiffs and the FWW Class for shifts spanning two calendar days and with less than 11 hours between the shifts ("clopening" shifts) and paid employees the required $100 premium for such shifts. N.Y.C. Admin. Code § 20-1231; 6 R.C.N.Y. § 7-601(a);

(j) whether Defendants gave Plaintiffs and the FWW Class the opportunity to work more shifts before hiring new employees. N.Y.C. Admin. Code § 20-1241; N.Y.C. Admin. Code § 20- 1221(a); and

(k) whether Defendants maintained records that document their compliance with each of the above requirements of the Fair Workweek Law for three years. N.Y.C. Admin. Code § 20-1206(a); 6 R.C.N.Y. § 7- 609(a).

## PLAINTIFFS' FACTUAL ALLEGATIONS

100.    Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiffs, individually, as follows:

**Marvin Georges**

101.    Georges was employed at the Jet's Pizza fast food establishment located at 1165 2nd Ave, New York, New York 10065, as an hourly fast food employee from approximately August 15, 2023 until November 15, 2023.

102.    As a fast food employee at Jet's Pizza, Georges performed duties for Defendants that included preparing food, cleaning, customer service, and other similar responsibilities.

103.    Defendants failed to pay Georges for all hours worked each week (*i.e.* "time-shaving"). For example, for the period September 11, 2023 through September 17, 2023, Plaintiff Georges worked the following hours:

| | |
|---|---|
| 9/12/2023 | 9.65 |
| 9/13/2023 | 11.27 |
| 9/15/2023 | 10.80 |
| 9/16/2023 | 7.07 |
| 9/17/2023 | 7.65 |
| **Total** | **47.07** |

104.    Based on these hours clocked, Plaintiff Georges was entitled to 40 hours of regular pay and 7.07 hours of overtime pay.

105.    However, Defendants shaved Plaintiff George's hours and only paid him for 40 hours of regular pay:

**Earnings Statement**

| Company Code | Loc/Dept | Number | Page |
|---|---|---|---|
| KV / BBK 26259013 | 01/ | 5343056 | 1 of 1 |

Detroit Pizza NYC LLC
1165 2nd Ave
New York, NY 10065-8243

Period Starting:    09/11/2023
Period Ending:    09/17/2023
Pay Date:    09/22/2023

Business Phone:    312-259-0369

Taxable Filing Status: Single
Exemptions/Allowances:
  Federal:    Std W/H Table    Tax Override:
  State:    0    Federal:    0.00 Addnl
  Local:    0    State:
Social Security Number:XXX-XX-XXXX    Local:

**Marvins Georges**
**1 Pennsylvania Plaza**
**STE 6189**
**New York, NY 10119**

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | 17.0000 | 40.00 | 680.00 | 2948.31 |
| Overtime | | | 0.00 | 66.81 |
| **Gross Pay** | | | **$680.00** | **$3,015.12** |

Other Benefits and Information

Sick
  - Carry Over
  - Accrued Hours
  - Taken Hours

106.    Defendant also failed to factor in all payments when calculating Georges' regular rate for overtime purposes.

107.    For example, the following additional miscellaneous pay should have been considered in the calculation of Plaintiff Georges' regular rate of pay for overtime purposes:

**Earnings Statement**

| Company Code | Loc/Dept | Number | Page |
|---|---|---|---|
| KV / BBK 26259013 | 01/ | 5364057 | 1 of 1 |

Detroit Pizza NYC LLC
1165 2nd Ave
New York, NY 10065-8243

Period Starting:    09/25/2023
Period Ending:    10/01/2023
Pay Date:    10/06/2023

Business Phone:    312-259-0369

Taxable Filing Status: Single
Exemptions/Allowances:
  Federal:    Std W/H Table    Tax Override:
  State:    0    Federal:    0.00 Addnl
  Local:    0    State:
Social Security Number:XXX-XX-XXXX    Local:

**Marvins Georges**
**1 Pennsylvania Plaza**
**STE 6189**
**New York, NY 10119**

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | 18.0000 | 40.00 | 720.00 | 4348.31 |
| Overtime | 27.0000 | 8.42 | 227.34 | 579.50 |
| Misc pay | | 0.00 | 47.12 | 47.12 |
| **Gross Pay** | | | **$994.46** | **$4,974.93** |

Other Benefits and Information

Sick
  - Carry Over
  - Accrued Hours
  - Taken Hours
  - Balance

108.    Furthermore, Defendants retained and/or misappropriated tips intended for Georges. In this regard, Defendants did not distribute customer tips to Georges.

109.    Throughout his employment, Defendants failed to provide Georges with accurate wage statements with each payment of wages as required by the NYLL, because the wage statements provide to Georges by Defendants failed to the correct number of hours he worked.

110.    Defendants' failure to provide Georges with accurate wage statements misinformed Georges about the correct number of hours he worked, and thus the wages he was entitled to receive, and allowed to Defendants to continue their unlawful pay scheme.

111.    When Defendants first hired Georges, it did not provide him with a good faith estimate of the hours, dates, times, and locations of her expected regular schedule in violation of N.Y.C. Admin Code § 20-1221(a).

112.    Defendants regularly failed to provide Georges with a written work schedule at least 14 days before the first day of each schedule in violation of N.Y.C. Admin. Code §§ 20-1201 and 20-1221(b)-(c).

113.    During Georges' employment, Defendants failed to post the schedule in the workplace and/or personally provide it to Georges, either electronically or on paper. N.Y.C. Admin. Code § 20-1221(c)(1).

114.    When Defendants added time to Georges' work schedule with less than 14 days' advance notice – or no advance notice at all – it did not give Pool an opportunity to decline to work the additional time in violation of N.Y.C. Admin. Code § 20-1221(d).

115.    During Georges' employment, Defendants regularly changed Georges' schedule at the last minute and failed to pay her schedule change premiums in violation of N.Y.C. Admin. Code § 20-1222(a); 6 R.C.N.Y. § 7-606(b).

116.    Defendants required Georges to work shifts spanning two calendar days and with less than 11 hours between the shifts ("clopening") without Georges' consent and without paying Georges $100 for each such shift worked. N.Y.C. Admin. Code § 20-1231; 6 R.C.N.Y. § 7-601(a).

117.    Defendants also failed to notify Georges of the details of the available shifts, including whether the shifts were recurring and how to express interest in picking them up, before hiring new employees in violation of N.Y.C. Admin. Code § 20-1241.

118.    Further, Defendants reduced Georges hours by more than 15% from his highest amount of hours worked in the prior 12 months and failed to provide any written explanation for the reduction, in violation of N.Y.C. Admin. Code § 20-1221(a).

119.    Plaintiffs' Counsel, Fitapelli & Schaffer, LLP, reached out to Defendants via demand letter, on October 20, 2023, stating Plaintiffs' claims against Defendants on behalf of themselves and similarly situated fast food workers. The letter was delivered via Fed-Ex on October 23, 2023.

120.    On October 24, 2023, Defendants, via District Manager, Kyle Dixons, asked Plaintiffs Georges to sign a document entitled "Jet's Pizza NYC Point of Clarification". *See* **Exhibit A**. The document explained that Jet's Pizza would retroactively receive his previously promised pay raise retroactively. The document stated Georges "said after he brought these issues to Kyle [Dixon] to resolve that if he was paid the below compensation [$241.05] he would no longer have any wage and labor or related claims with Jet's Pizza." *Id.*

121.    Plaintiff Georges did not agree with these statements and refused to sign the document.

122.    Thereafter, Defendants immediately reduced Plaintiffs Georges' hours from approximately 40 per workweek to 32, a 20% reduction, without just cause and without providing

a written explanation.

123.    On November 8, 2023, Plaintiffs' Counsel received a response from Defendants regarding their claims. Defendants' response letter threatens criminal charges against Plaintiff Marvin Georges, civil claims against both plaintiffs, in excess of $800,000, and alleged attorney malpractice. *See* **Exhibit B**.

124.    On November 15, 2023, Defendants terminated Plaintiff Georges in retaliation for attempting to adjudicate his claims under the FLSA, NYLL, and Fair Workweek Law. These reasons given for Plaintiff Georges termination are pretext and factually incorrect.

**Jerel Pool**

125.    Pool was employed at the Jet's Pizza fast food establishment located at 1165 2nd Ave, New York, New York 10065, as an hourly fast food employee from approximately August 13, 2023 until October 6, 2023.

126.    As a fast food employee at Jet's Pizza, Pool performed duties for Defendants that included preparing food, cleaning, customer service, and other similar responsibilities.

127.    Defendants failed to pay Pool for all hours worked each week (*i.e.* "time-shaving").

128.    Defendant also failed to factor in all payments when calculating Pool's regular rate for overtime purposes.

129.    Furthermore, Defendants retained and/or misappropriated tips intended for Pool. In this regard, Defendants did not distribute customer tips to Pool.

130.    Throughout his employment, Defendants failed to provide Pool with accurate wage statements with each payment of wages as required by the NYLL, because the wage statements provide to Pool by Defendants failed to the correct number of hours he worked.

131.    Defendants' failure to provide Pool with accurate wage statements misinformed

Pool about the correct number of hours he worked, and thus the wages he was entitled to receive, and allowed to Defendants to continue their unlawful pay scheme.

132.    When Defendants first hired Pool, it did not provide him with a good faith estimate of the hours, dates, times, and locations of her expected regular schedule in violation of N.Y.C. Admin Code § 20-1221(a).

133.    Defendants regularly failed to provide Pool with a written work schedule at least 14 days before the first day of each schedule in violation of N.Y.C. Admin. Code §§ 20-1201 and 20-1221(b)-(c).

134.    During Pool's employment, Defendants failed to post the schedule in the workplace and/or personally provide it to Pool, either electronically or on paper. N.Y.C. Admin. Code § 20-1221(c)(1).

135.    When Defendants added time to Pool's work schedule with less than 14 days' advance notice – or no advance notice at all – it did not give Pool an opportunity to decline to work the additional time in violation of N.Y.C. Admin. Code § 20-1221(d).

136.    During Pool's employment, Defendants regularly changed Pool's schedule at the last minute and failed to pay her schedule change premiums in violation of N.Y.C. Admin. Code § 20-1222(a); 6 R.C.N.Y. § 7-606(b).

137.    Defendants required Pool to work shifts spanning two calendar days and with less than 11 hours between the shifts ("clopening") without Pool's consent and without paying Pool $100 for each such shift worked. N.Y.C. Admin. Code § 20-1231; 6 R.C.N.Y. § 7-601(a).

138.    Defendants also failed to notify Pool of the details of the available shifts, including whether the shifts were recurring and how to express interest in picking them up, before hiring new employees in violation of N.Y.C. Admin. Code § 20-1241.

139.     Further, or around January 2023, Defendants reduced Pools hours by more than 15% from his highest amount of hours worked in the prior 12 months and failed to provide any written explanation for the reduction, in violation of N.Y.C. Admin. Code § 20-1221(a).

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiffs and the FLSA Collective)**

140.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

141.     The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the FLSA Collective.

142.     Plaintiffs and the FLSA Collective worked in excess of 40 hours during workweeks in the relevant period.

143.     Defendants failed to pay Plaintiffs and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times their regular rate of pay, for all hours worked in excess of 40 per workweek.

144.     As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective have suffered damages by being denied proper overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

**SECOND CAUSE OF ACTION**
**New York Labor Law – Agreed Upon Wages**
**(Brought on behalf of Plaintiffs and the NYLL Class)**

145.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

146.     Pursuant to NYLL, Article 6 § 191(1)(d), Defendants have been required to pay

22

Plaintiffs and the NYLL Class the wages they have earned in accordance with the agreed terms of their employment.

147.    Defendants failed to pay Plaintiffs and the NYLL Class for all hours worked, at their agreed upon rate of pay.  In this regard, Defendants "shaved" Plaintiffs' and the NYLL Class's time.

148.    As a result of the common policies described above Defendants has violated the agreed upon wage provisions of the NYLL with respect to Plaintiffs and the NYLL Class by: failing to compensate Plaintiffs and the NYLL Class for all hours worked up to and including 40 at their agreed upon rate of pay.

149.    Due to Defendants' violations of the NYLL, Plaintiffs and the NYLL Class are entitled to recover from Defendants their agreed wages, liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**THIRD CAUSE OF ACTION**
**New York Labor Law – Overtime Wages**
**(Brought on behalf of Plaintiffs and the NYLL Class)**

150.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

151.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect Plaintiffs and the NYLL Class.

152.    Defendants failed to pay Plaintiffs and the NYLL Class the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times their regular rate of pay, for all hours worked beyond 40 per workweek.

153.    In this regard, Defendants required Plaintiffs and the NYLL Class to perform work

without compensation. Specifically, Defendants paid Plaintiffs and the NYLL Class a stipend for "on call" time, however, during this time, Plaintiffs and the NYLL Class were regularly performing work for which they were not compensated for at their overtime rate of pay.

154.    Due to Defendants' violations of the NYLL, Plaintiffs and the NYLL Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Tip Misappropriation**
**(Brought on behalf of Plaintiffs and the NYLL Class)**

155.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

156.    Defendants unlawfully demanded or accepted, directly or indirectly, part of the gratuities received by Plaintiffs and the NYLL Class in violation of NYLL, Article 6, § 196-d, and 12 NYCRR 146-2.14.

157.    Defendants unlawfully retained tips intended for Plaintiffs and the NYLL Class, in violation of NYLL Article 6, § 196-d and 12 NYCRR 146-2.14.

158.    Due to Defendants' violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover from Defendants the value of the misappropriated gratuities, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

## FIFTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Accurate Wage Statements
### (Brought on behalf of Plaintiffs and the NYLL Class)

159.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

160.    Defendants failed to supply Plaintiffs and the NYLL Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked per week, including overtime hours worked if applicable; deductions; and net wages.

161.    Due to Defendant's violations of NYLL § 195(3), Plaintiffs and the NYLL Class are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198.

## SIXTH CAUSE OF ACTION
### Fair Workweek Law
### Failure to Provide Written Good Faith Estimates
### (Brought on behalf of Plaintiffs and the FWW Class)

162.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

163.    Defendants are required to provide each new employee with a written good faith estimate no later than when a new employee receives his or her first work schedule. N.Y.C. Admin. Code § 20-1221(a).

164.    Defendants are also required to maintain records of the good faith estimates it provides to employees. N.Y.C. Admin. Code § 20-1206(a); 6 R.C.N.Y. § 7-609(a)(2)(i). A failure to maintain, retain, or produce a required record that is relevant to a material fact creates a rebuttable Defendants that such fact is true. N.Y.C. Admin. Code § 20-1206(b).

165.    Defendants may not reduce the total hours in a fast food employee's regular schedule by more than 15% from the highest total hours contained in such employee's regular schedule at any time within the previous 12 months, unless the employee has previously consented to or requested such reduction in writing, without just cause or a legitimate business reason. N.Y.C. Admin. Code § 20-1221(a).

166.    Defendants committed a violation of § 20-1221(a) of the Fair Workweek Law each time it failed to provide a written good faith estimate to any hourly employee hired to work in any New York City store.

167.    Defendants also committed a violation of § 20-1221(a) of the Fair Workweek Law each time it reduced an employees' regular schedule by more than 15% from the highest total hours as described herein.

168.    Due to Defendants' violations of the Fair Workweek Law, § 20-1221(a). Plaintiff and the FWW Class have been deprived of a predictable work schedule and are entitled to recover from Defendants compensatory damages and any other relief required to make the employees whole, and reasonable attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION
**Fair Workweek Law**
**Failure to Provide Advance Notice of Work Schedules**
**(Brought on behalf of Plaintiffs and the FWW Class)**

169.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

170.    Defendants are required to provide employees with written notice of their work schedules at least 14 days before the first day of each schedule. N.Y.C. Admin. Code § 20-1221(b).

171.    Defendants are also required to maintain records of each written schedule provided to each employee. N.Y.C. Admin. Code § 20-1206(a); 6 R.C.N.Y. § 7-609(a)(1)(iii). A failure to maintain, retain, or produce a required record that is relevant to a material fact creates a rebuttable presumption that such fact is true. N.Y.C. Admin. Code § 20-1206(b).

172.    Defendants committed a violation of § 20-1221(b) of the Fair Workweek Law each week it failed to provide each employee with that employee's written work schedule 14 days in advance.

173.    Due to Defendants' violations of the Fair Workweek Law, § 20-1221(b-c), Plaintiff and the FWW Class have been deprived of a predictable work schedule and are entitled to recover from Defendants compensatory damages and any other relief required to make the employees whole, and reasonable attorneys' fees and costs.

## EIGHTH CAUSE OF ACTION
**Fair Workweek Law**
**Failure to Obtain Written Consent for Additional Hours**
**(Brought on behalf of Plaintiffs and the FWW Class)**

174.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

175.    Defendants are required to obtain written consent from fast food employees who

work additional hours that are not included in their initial work schedules. N.Y.C. Admin. Code § 20- 1221(d).

176.    Defendants are required to maintain records that show fast food employees' advance written consent to any schedule changes in which hours are added to the fast food employee's initial work schedule. N.Y.C. Admin. Code § 20-1206(a); 6 R.C.N.Y. § 7-609(a)(1)(ii). A failure to maintain, retain, or produce a required record that is relevant to a material fact creates a rebuttable presumption that such fact is true. N.Y.C. Admin. Code § 20-1206(b).

177.    Defendants committed a unique violation of § 20-1221(d) of the Fair Workweek Law each time it failed to obtain a fast food employee's advance written consent for hours added to the initial work schedule.

178.    Due to Defendants' violations of the Fair Workweek Law, § 20-1221(d), Plaintiff and the FWW Class have been deprived of a predictable work schedule and are entitled to recover from Defendants compensatory damages and any other relief required to make the employee whole, and reasonable attorneys' fees and costs.

**NINTH CAUSE OF ACTION**
**Fair Workweek Law**
**Failure to Provide Schedule Change Premiums**
**(Brought on behalf of Plaintiffs and the FWW Class)**

179.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

180.    Defendants are required to provide employees with premium pay for changes it makes to employees' work schedules any time after the 14-day statutory schedule provision date. N.Y.C. Admin. Code § 20-1222(a).

181.    Defendants are required to maintain records that show each written work schedule provided to each employee, each employee's actual hours worked, and the amounts of premium

pay provided to employees whose work schedules are changed by Defendants with less than 14 days' notice. N.Y.C. Admin. Code § 20-1206(a); 6 R.C.N.Y. §§ 7-609(a)(1) and 609(a)(2)(ii). A failure to maintain, retain, or produce a required record that is relevant to a material fact creates a rebuttable presumption that such fact is true. N.Y.C. Admin. Code § 20-1206(b).

182.    Defendants committed a unique violation of § 20-1222(a) of the Fair Workweek Law each time it failed to pay required schedule change premiums to fast food employees whose work schedules it changed with less than 14 days' notice.

183.    Due to Defendants' violations of the Fair Workweek Law, § 20-1222(a), Plaintiff and the FWW Class have been deprived of a predictable work schedule and are entitled to recover from Defendants unpaid schedule change premiums, ranging from $10 to $75 for each violation, compensatory damages and any other relief required to make the employee whole, and reasonable attorneys' fees and costs.

## TENTH CAUSE OF ACTION
### Fair Workweek Law
### Failure to Obtain Written Consent and Provide Premium Pay for Clopenings
### (Brought on behalf of Plaintiffs and the FWW Class)

184.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

185.    Defendants are prohibited from requiring fast food employees to work clopenings, unless the employee provides written consent, and Defendants provide $100 in premium pay, to work the clopening. N.Y.C. Admin. Code § 20-1231.

186.    For required clopenings, Defendants are required to maintain records showing that it obtained written consent from the employee, and records of premium pay that it provided to the employee. N.Y.C. Admin. Code § 20-1206(a); 6 R.C.N.Y. §§ 7-609(a)(1)(ii) and 609 (a)(2)(ii).

187.    A failure to maintain, retain, or produce a required record that is relevant to a

material fact creates a rebuttable presumption that such fact is true. N.Y.C. Admin. Code § 20-1206(b).

188.    Defendants committed a violation of § 20-1231 of the Fair Workweek Law each time it failed to obtain written consent from an employee who worked a clopening.

189.    Defendants committed a violation of § 20-1231 of the Fair Workweek Law each time it failed to pay $100 in premium pay to an employee who worked a clopening.

190.    Due to Defendants' violations of the Fair Workweek Law, § 20-1231, Plaintiff and the FWW Class have been deprived of a predictable work schedule and are entitled to recover from Defendants unpaid premiums of $100 for each violation, compensatory damages and any other relief required to make the employee whole, and reasonable attorneys' fees and costs.

**ELEVENTH CAUSE OF ACTION**
**Fair Workweek Law**
**Failure to Offer Newly Available Shifts to Existing Employees**
**(Brought on behalf of Plaintiffs and the FWW Class)**

191.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

192.    Defendants are required to notify its current employees about newly available shifts and offer them those shifts before hiring any new employees. N.Y.C. Admin. Code § 20- 1241.

193.    Defendants are required to maintain records that document its compliance with the Fair Workweek Law for three years. N.Y.C. Admin. Code § 20-1206(a). A failure to maintain, retain, or produce a required record that is relevant to a material fact creates a rebuttable presumption that such fact is true. N.Y.C. Admin. Code § 20-1206(b).

194.    Defendants committed a unique violation of § 20-1241 of the Fair Workweek Law each time it failed to offer a current employee the shifts it subsequently offered to a new hire in the same Jet's Pizza location.

195. Due to Defendants' violations of the Fair Workweek Law, § 20-1241, Plaintiff and the FWW Class have been deprived of a predictable work schedule and are entitled to recover from Defendants compensatory damages and any other relief required to make the employee whole, and reasonable attorneys' fees and costs.

### TWELFTH CAUSE OF ACTION
**Fair Labor Standards Act**
**Retaliation**
**(Brought on behalf of Plaintiff Georges)**

196. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

197. Upon learning, via Plaintiffs' Counsel's demand letter, that Plaintiff Georges intended to enforce his rights under the FLSA, Defendant terminated Plaintiff Georges. As such, Defendants retaliated against Plaintiff Georges for attempting to enforce his rights under the FLSA.

198. Plaintiffs' demand letter to Defendants is a protected activity under 29 U.S.C. § 215(3).

199. Defendants terminated Plaintiff Georges in an effort to harass and intimidate, and/or to otherwise interfere with his attempts to vindicate his rights under the FLSA.

200. Terminating Plaintiff Georges in response to Plaintiff Georges' initiation of an action to recover unpaid wages constitutes retaliation and discrimination in violation of 29 U.S.C. § 215(3).

201. Plaintiff Georges has suffered damages including, but not limited to, intimidation, harm to his reputation, legal costs, and delay as a result of Defendants' retaliation.

202. Due to Defendants' violations of the FLSA, Plaintiff Georges is entitled to recover from Defendants back pay, front pay, compensatory damages, liquidated damages, punitive

damages, and attorneys' fees and costs.

### THIRTEENTH CAUSE OF ACTION
#### New York Labor Law
#### Retaliation
#### (Brought on behalf of Plaintiff Georges)

203.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

204.    Upon learning, via Plaintiffs' Counsel's demand letter, that Plaintiff Georges intended to enforce his rights under the NYLL, Defendant terminated Plaintiff Georges. As such, Defendants retaliated against Plaintiff Georges for attempting to enforce his rights under the NYLL.

205.    Plaintiffs' demand letter to Defendants is a protected activity under NYLL § 215.

206.    Defendants terminated Plaintiff Georges in an effort to harass and intimidate, and/or to otherwise interfere with his attempts to vindicate his rights under the NYLL.

207.    Notice of this claim has been served upon the Attorney General pursuant to NYLL § 215(2).

208.    Plaintiff Georges has suffered damages including, but not limited to, intimidation, harm to his reputation, legal costs, and delay as a result of Defendants' retaliation.

209.    Due to Defendants' violations of the NYLL, Plaintiff Georges is entitled to recover from Defendants back pay, front pay, compensatory damages, liquidated damages, punitive damages, and attorneys' fees and costs.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similar persons, respectfully request that this Court grant the following relief:

A.    That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective

action, or that the Court issue such notice, to all Fast Food Workers in the United States who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked for Defendants. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.    Unpaid overtime wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.    Designation of Plaintiffs as representatives of the New York Classes and counsel of record as Class Counsel;

E.    Unpaid agreed upon wages, overtime wages, misappropriated tips, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F.    Statutory penalties of two hundred fifty dollars for each workday that Defendant failed to provide Plaintiff and the New York Class with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article § 198;

G.    Unpaid schedule change premiums, unpaid clopening premiums, compensatory damages, and penalties, as provided by law, and any other relief required to make Fast Food Workers whole;

H.    Pre-judgment and post-judgement interest, as provided by law; and

I.    Reasonable attorneys' fees and costs of the action; and

J.      Such other relief as this Court shall deem just and proper.

Dated: New York, New York
       December 22, 2023

                                     Respectfully submitted,

                                     */s/ Brian S. Schaffer*
                                     Brian S. Schaffer

                                     **FITAPELLI & SCHAFFER, LLP**
                                     Brian S. Schaffer
                                     Dana M. Cimera
                                     28 Liberty Street, 30th Floor
                                     New York, New York 10005
                                     Telephone: (212) 300-0375

                                     *Attorneys for Plaintiffs and*
                                     *the Putative Class*

## FAIR LABOR STANDARDS ACT CONSENT

1.    I consent to be a party plaintiff in a lawsuit against Jet's Pizza and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2.    By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement.  I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount.  I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

_Marvins Georges (Oct 9, 2023 03:12 EDT)_
_____
Signature

# Marvins Georges
_____
Full Legal Name (Print)

## FAIR LABOR STANDARDS ACT CONSENT

      1.      I consent to be a party plaintiff in a lawsuit against Jet's Pizza and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

      2.      By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement.  I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs.  I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount.  I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

Jerel pool (Oct 10, 2023 13:13 EDT)
_____

Signature

## Jerel Pool
_____

Full Legal Name (Print)